UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

BRENDA DIAZ,

                  Plaintiff,

  -v-                                          6:11-CV-838

HIGH ROLLERS RECREATIONAL CENTER,
INC., d/b/a as High Rollers Family Fun Center,

                  Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                                    OF COUNSEL:

JAROSLAWICZ & JAROS, LLC              DAVID JAROSLAWICZ, ESQ.
Attorneys for Plaintiff
225 Broadway
24th Floor
New York, NY  10007

CRUSER, MITCHELL & NOVITZ, LLP       KEITH V. TOLA, ESQ.
Attorneys for Defendant                         RONDIENE E. NOVITZ, ESQ.
175 Pinelawn Road, Suite 301
Melville, NY  11747


DAVID N. HURD
United States District Judge

## MEMORANDUM–DECISION and ORDER

## I. INTRODUCTION

     On July 19, 2011, plaintiff Brenda Diaz ("plaintiff" or "Diaz") commenced this action against defendant High Rollers Recreational Center, Inc. ("defendant" or "High Rollers"). Plaintiff asserts one negligence claim arising from injuries she sustained on July 2, 2010, at defendant's roller rink in Amsterdam, New York.  Subject matter jurisdiction is based on the

complete diversity of the parties as Diaz is a resident of Puerto Rico and High Rollers is a New York corporation, and the amount in controversy exceeds $75,000.  See 28 U.S.C. § 1332(a).

The parties have completed discovery and, on November 1, 2012, defendant filed a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.  ECF No. 13. Plaintiff has responded in opposition, and defendant replied.  The motion was considered on submit without oral argument.

## II. FACTUAL BACKGROUND

Unless otherwise noted, the following facts are undisputed.  During the relevant time period, High Rollers owned and operated a roller rink in Amsterdam, New York.  On the evening of July 2, 2010, Diaz—then a thirty-three-year-old experienced[1] roller skater—arrived at this facility with several family members including her five-year-old son and her sisters, Norma Diaz ("Norma") and Catherine Perez ("Catherine").  Two "Floor Guards" employed by defendant were working that night.  Their duties included staffing the equipment rental booth and patrolling the rink to maintain order.  Two managers were also working at the facility on that date.  During their depositions, these employees reported that defendant's general policy with regard to reckless skaters is to issue a warning for the first offense and remove them from the rink floor after a second offense.

When she entered the building and looked toward the rink floor on July 2, 2010,[2] Diaz

---

[1] During her deposition Diaz reported that she has roller skated in a rink between thirty and forty times, the last occasion being in 1995.

[2] At the entrance to the rink a sign was posted warning:  "No Fast Skating[.] Any skater who consistently passes more skaters than pass him (her) is skating too fast.  The average speed of the majority of the skaters will be considered the maximum speed of any skater."  Jaroslawicz Affirmation, Ex. J, ECF No.
(continued...)

immediately noticed a young male with long hair wearing jeans and a black jacket skating aggressively and at a higher rate of speed than the other skaters. At various points throughout the evening she observed this person skating fast and cutting in front of other skaters. Catherine advised that she had seen this skater at the High Rollers rink before and cautioned Diaz to "watch out" for him. Pl.'s Dep. Tr., Tola Affirmation, Ex. C, ECF No. 14-3, 73:19–23. Neither plaintiff nor her family members reported this skater to any of defendant's employees. Both Floor Guards and managers denied observing anyone skating recklessly on the evening of July 2, 2010, and denied receiving any complaints about such a skater on that date.

Diaz remained at the roller rink for approximately two hours, during which she entered and exited the rink floor for three separate skating sessions that each lasted approximately twenty minutes. The first two sessions were without incident. While skating near her son and Norma during the third session, however, plaintiff was struck from behind by an unidentified skater, fell to the floor, and suffered a severely broken right ankle. She claims that she was struck by the unidentified young male with long hair whom she had seen skating aggressively throughout the evening. She specifically claims that she saw this skater stumbling next to her after she felt the impact from behind and began falling. Norma also observed the same young male skater near plaintiff just prior to the fall. Various witnesses reported that there was between twenty-five to 100 skaters on the rink floor at the time of the incident.

Both Floor Guards and one of the managers came to Diaz's aid within approximately

[2](...continued)
19-10.

thirty seconds of her fall. They lifted her off the rink floor, carried her several feet, and placed her on a bench. Her injured leg was elevated, and one of the Floor Guards removed her roller skates and socks. An ambulance was summoned and arrived within twenty-five minutes. The ambulance crew placed her right ankle in a soft splint and applied an ice pack. Plaintiff was transported to St. Mary's Hospital where she was given pain medication, and her right leg below the knee was x-rayed and placed in a hard splint. She was then transferred to Albany Medical Center for possible surgery. However, after more x-rays the need for surgery was ruled out, and a hard cast was placed on her right ankle.[3]

Norma filled out a written incident report at the roller rink and noted that "while skating another person who was going fast bumped into her accidentally causing her to fall and land on her right ankle." Tola Affirmation, Ex. M, ECF No. 14-13. Plaintiff has retained Leonard K. Lucenko, Ph.D., a Roller Skating Safety and Risk Management Consultant, as an expert. His report and opinion generally supports her negligence claim.

## III. DISCUSSION

Diaz alleges that defendant negligently caused her injury by failing to supervise the skaters on the rink floor, allowing reckless skating, and providing poor medical care that aggravated her injury.[4] High Rollers maintains that it is entitled to summary judgment because: (1) plaintiff assumed the inherent risks of injury associated with roller skating; (2)

---

[3] Plaintiff received follow-up treatment from an orthopedist upon her return to Puerto Rico. She estimates that she currently owes $5000.00 for her care at the two New York hospitals. Her care in Puerto Rico has been paid for through a government assistance program.

[4] In her complaint, Diaz also alleges that defendant violated "applicable laws, rules and regulations." Compl. ¶ 12. However, she has not identified any laws, rules, or regulations that have been violated. The only regulation mentioned anywhere in either party's paperwork is a guideline set by the Roller Skating Rink Association recommending one Floor Guard per 200 skaters on the rink floor. It is un disputed that on July 2, 2010, two Floor Guards were on duty and, at most, 100 skaters were on the floor. Her suggestion that defendant was somehow per se negligent for violating laws, rules, and regulations is thus without merit.

the supervision provided by defendant was adequate and not a proximate cause of her injury; and (3) the post-incident care was reasonable and did not cause further injury.[5]

### A. Motion for Summary Judgment—Legal Standard

High Rollers has moved for summary judgment pursuant to Federal Rule of Civil Procedure 56. The entry of summary judgment is warranted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986) (citing Fed. R. Civ. P. 56(c)); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 2509–10 (1986). A fact is "material" for purposes of this inquiry if it "might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510; see also Jeffreys v. City of New York, 426 F.3d 549, 553 (2d Cir. 2005). A material fact is genuinely in dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248, 106 S. Ct. at 2510.

When summary judgment is sought, the moving party bears the initial burden of demonstrating that there is no genuine issue of material fact to be decided with respect to any essential element of the claim. Id. at 250 n.4, 106 S. Ct. at 2511 n.4. The failure to meet this burden warrants denial of the motion. Id. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of

---

[5] Defendant also asserts that the report and opinions of plaintiff's expert are conclusory and speculative, and should not be considered for purposes of the motion for summary judgment. However, this argument is moot as it is unnecessary to consider the expert report to resolve the pending motion. As defendant notes in its reply, plaintiff does not rely on the report in her opposition papers. Whether the expert's report and testimony is admissible at trial will be addressed at that point.

fact for trial. Id. at 250, 106 S. Ct. at 2511.

When deciding a summary judgment motion, a court must resolve any ambiguities and draw all inferences from the facts in a light most favorable to the nonmoving party. Jeffreys, 426 F.3d at 553. Summary judgment is inappropriate where "review of the record reveals sufficient evidence for a rational trier of fact to find in the [non-movant's] favor." Treglia v. Town of Manlius, 313 F.3d 713, 719 (2d Cir. 2002) (citation omitted); see also Anderson, 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

### B. Assumption of Risk and Negligent Supervision

High Rollers argues that Diaz's negligence claim fails as a matter of law because she assumed the risk of being injured while roller skating on the rink floor. Plaintiff maintains that the risk presented by the unidentified young male skater was over and above the ordinary risk inherent in roller skating and, therefore, a risk defendant had a duty to protect her from.

Generally, a voluntarily participant in a recreational sporting event has no legal recourse for injuries caused by an occurrence or condition that was a known, apparent, or reasonably foreseeable consequence of such participation. Roberts v. Boys & Girls Republic, Inc., 51 A.D.3d 246, 247 (N.Y. App. Div. 1st Dep't) (Lippman, P.J.), aff'd, 891 N.E.2d 719, 10 N.Y.3d 889 (2008); see also Morgan v. State, 90 N.Y.2d 471, 484 (1997) ("Relieving an owner or operator of a sporting venue of liability for inherent risks of engaging in a sport is justified when a consenting participant is aware of the risks; has an appreciation of the nature of the risks; and voluntarily assumes the risks.").

The doctrine of assumption of risk is not a complete bar to a negligence claim, but rather limits a defendant's duty to "exercising care to make the conditions as safe as they

appear to be." Roberts, 51 A.D.3d at 248 (internal quotation marks and alteration omitted). In other words, "[i]f the risks of the activity are fully comprehended or perfectly obvious, [the] plaintiff has consented to them and [the] defendant has performed its duty." Id. (internal quotation marks omitted). To determine if a defendant has breached this duty, consideration should be given to "whether the conditions caused by the defendant['s] negligence are unique and created a dangerous condition over and above the usual dangers that are inherent in the sport." Morgan, 90 N.Y.2d at 485 (internal quotation marks omitted). However, voluntary participants cannot be deemed to have assumed the risks posed by reckless or intentional conduct. Id.

It is undisputed that Diaz consented to the risks commonly associated with roller skating when she entered the rink floor to skate on July 2, 2010. Viewing the evidence in the light most favorable to her, she was struck from behind by the same unidentified young male skater who had been skating aggressively in violation of the rink rules and cutting in front of other skaters throughout the evening. This skater's conduct was obvious to all in the rink, including plaintiff and defendant's employees. The parties dispute whether this collision was a consequence of the risks commonly associated with roller skating. They cite different case law supporting their respective arguments.

The case law cited by plaintiff is more persuasive. A sudden collision with another skater is the type of risk commonly associated with roller skating. See Bleyer v. Recreational Mgmt. Serv. Corp., 289 A.D.2d 519, 520 (N.Y. App. Div. 2d Dep't 2001). However, a skater does not assume the risks associated with another's reckless conduct. Morgan, 90 N.Y.2d at 485; Ballan v. Arena Mgmt. Grp., LLC, 41 A.D.3d 1015, 1016 (N.Y. App. Div. 3d Dep't 2007). The collision that caused Diaz's injuries was not sudden. It was instead a foreseeable

occurrence that may have been avoided had defendant's employees properly supervised the skaters and enforced the rink rules. In fact, one of the managers working on the night of the incident, Leonard Brown, explained that fast skating is prohibited because it creates a "dangerous" situation for other skaters. Brown Dep. Tr., Jaroslawicz Affirmation, Ex. I, ECF No. 19-9, 41:9–10. He then acknowledged that fast skating poses a risk greater than that typically associated with roller skating.

Adopting defendant's argument would lead to the illogical conclusion that any recreational facility owner is completely relieved of liability as long as the reckless conduct of a participant, no matter how dangerous, is apparent to the other participants. This wrongly shifts the proprietor's duty of care onto the paying customer, who defendant would have refrain from participation in the recreational activity due to the reckless conduct of others while defendant's staff did nothing to correct the obviously hazardous situation.

In short, the evidence in the record is sufficient to raise issues of material fact as to whether defendant negligently failed to supervise and control the unidentified skater on July 2, 2010. See Ballan, 41 A.D.3d at 1016; Nunez v. Recreation Rooms & Settlement, Inc., 229 A.D.2d 359, 360 (N.Y. App. Div. 1st Dep't 1996); Shorten v. City of White Plains, 224 A.D.2d 515, 515 (N.Y. App. Div. 2d Dep't 1996) (affirming denial of defendant's motion for summary judgment "in light of the evidence presented by the plaintiffs that the injury was not caused by a sudden collision common to this sport but was due to the reckless actions of another skater which the defendant, by adequate supervision, could have prevented"). A further issue of material fact exists regarding plaintiff's comparative negligence, if any.

Accordingly, defendant's motion for summary judgment will be denied with regard to plaintiff's assumption of risk and defendant's negligent supervision.

### C. Negligent Medical Care

In her complaint, Diaz also alleges that defendant's employees negligently handled her after the fall, thereby aggravating her injuries. Defendant asserts that it does not have a duty to provide medical care and maintains that the care rendered by the Floor Guards and manager was reasonable. Diaz did not respond to this argument.

It is undisputed that an owner of a recreational facility owes a general duty to its patrons, as outlined above. However, there is no specific duty to provide a particular level of medical care to someone injured on the premises. The care provided by defendant's staff was reasonable, and no reasonable jury could find otherwise. The Floor Guards and one manager came to plaintiff's assistance within thirty seconds of her fall, stopped the other skaters to avoid a secondary collision, removed her from the rink floor, carried her to a bench approximately fourteen feet from where she fell, removed the heavy skate from her injured foot, and promptly summoned an ambulance. While it may have been more appropriate to leave her on the rink floor until trained emergency medical personnel arrive, there is no evidence—other than plaintiff's conclusory assertion—that this conduct worsened her injury.

Accordingly, defendant's motion for summary judgment will be granted only to the extent plaintiff alleges defendant's staff failed to provide adequate post-injury medical care.

## IV. CONCLUSION

There is sufficient admissible evidence in the record to establish issues of material fact as to whether defendant negligently failed to supervise and control the unidentified skater on July 2, 2010, and whether plaintiff was comparatively at fault for her own injuries. However, the negligence claim is limited to defendant's alleged negligent supervision and plaintiff's comparative negligence, if any.

Therefore, it is

ORDERED that

1. Defendant's motion for summary judgment (ECF No. 13) is GRANTED in part and DENIED in part;

2. The negligent medical care claim is DISMISSED;

3. Defendant's motion is DENIED with regard to the remaining negligence claims;

4. The negligence, assumption of risk, comparative negligence, and damages claims will proceed to trial; and

5. The trial will commence with jury selection at 9:30 a.m. on October 7, 2013, in Utica, New York. Pretrial submissions shall be filed on or before September 20, 2013, at noon.

IT IS SO ORDERED.

_____
United States District Judge

Dated: August 15, 2013
       Utica, New York.